01

02

03

04

05
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

06

07
THOMAS A. HIGHTOWER,         )   CASE NO. 2:08-cv-01129-MJP
                       )

Plaintiff,       )

08
                       )

v.           )   ORDER PARTIALLY GRANTING

09
                       )   DEFENDANTS' MOTION TO

JAMES TILTON, et al,        )   DISMISS

10
                       )

Defendants.    )

11
_____)
                       )

12

13
     This matter is before the Court on Defendants L.B. Reaves, E.A. Reyes, N. Grannis, and

14
James Tilton's motion to dismiss Plaintiff's complaint and Defendant's joinder of parties to the

15
motion.   After reviewing the motion, response, reply and documents submitted in support

thereof, the Court GRANTS and DENIES the motion to dismiss in part.

16

17
**I. Background**

18
     <u>Pro se</u> plaintiff Thomas Hightower is a disabled prisoner incarcerated at Mule Creek

19
State Prison in Ione, CA who filed a complaint in the Eastern District of California on May 22,

20
2008.   He seeks declaratory judgment, injunctive relief, monetary relief, and punitive damages

21
under 42 U.S.C. § 1983 for alleged violations of his First, Eighth, and Fourteenth Amendment

rights.   He also seeks redress under various California state laws.   Named defendants are

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -1

01  sixteen prison officials employed, or formerly employed, by the Mule Creek State Prison

02  ("MCSP") and the California Department of Corrections and Rehabilitation ("CDCR").   The

03  present motion concerns six of these officials – L.B. Reaves, E.A. Reyes, N. Grannis, Silvia H.

04  Garcia, Richard Subia, and James Tilton.

05       Reaves is either a correctional counselor or associate warden at MCSP.   Plaintiff

06  allegedly approached Reaves to complain about prison guards' behavior toward him, and

07  accuses Reaves of "refus[ing] to even acknowledge any serious violations of law . . . personally

08  choosing to ignore the actions of [the other] defendants."   (Dkt. No. 1 at 22.)

09       Reyes is also either a correctional counselor or associate warden at MCSP.   Reyes is

10  allegedly responsible for processing prisoner appeals at MCSP, and Plaintiff accuses him of

11  intentionally stalling the administrative appeal process.   (Id. at 33.)

12       Grannis is the Chief of Inmate Appeals of the CDCR.   Plaintiff claims that Grannis was

13  "responsible for establishing protocols and/or procedures, that, she/he knew was causing …

14  unconstitutional conditions of confinement," (Id. at 7), and that he "cannot deny [he] know[s]"

15  of other defendants' reputation for retaliation." (Id. at 15.)   It is unclear whether Plaintiff ever

16  directly contacted Grannis.

17       Garcia is the former chief deputy warden at MCSP.   Plaintiff accuses Garcia of

18  retaining him in solitary confinement for retaliatory reasons, allegedly against the

19  recommendation of the appeals board. (Id. at 24.)

20       Subia is the former warden of the MCSP.   Plaintiff accuses Subia of creating a prisoner

21  classification called "A2B" that denies prisoners certain privileges, including showers and

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -2

01 | recreation.   Plaintiff avers that the privileges denied are not actually privileges, but inalienable

02 | constitutional rights, and that Subia widely applied the A2B classification to the general prison

03 | population simply due to overcrowding.   (Id. at 26-35.)

04 |       Tilton is the former head of the CDCR.   Plaintiff claims that he complained about poor

05 | prison conditions and the "punitive" effects of the "A2B" status directly to Tilton, but received

06 | no response.   Plaintiff claims that this is tantamount to Tilton's approval of the conditions and

07 | their punitive nature.   (Id. at 35.)

08 |       On January 15, 2010, Reaves, Reyes, Grannis, and Tilton filed a motion to dismiss.

09 | (Dkt. No. 22.)   Defendants assert that the Plaintiff's complaint fails to meet the Fed. R. Civ. P.

10 | 8(a)(2) pleading standard.   They also claim qualified immunity.   Defendants did not move to

11 | dismiss any of Plaintiff's state law claims, nor did their motion specifically address Plaintiff's

12 | Fourteenth Amendment claims.

13 |       On February 11, 2010, Plaintiff moved for additional time to file his response to

14 | Defendants' motion.   (Dkt. No. 26.)   The Court did not rule on the motion before Plaintiff

15 | filed a response on March 16, 2010.   (Dkt. No. 31.)   On March 23, 2010, Defendants moved

16 | for an extension to file their reply (Dkt. No. 33), which was granted on April 1, 2010 (Dkt. No.

17 | 37).

18 |       Defendants filed a reply on April 6, 2010, asking for Plaintiff's response to be stricken

19 | as untimely.   (Dkt. No. 39.)   In separate filings, defendants Subia and Garcia joined the

20 | motion to dismiss.   (Dkt. No. 40; Dkt. No. 41.)   On April 23, 2010, Plaintiff filed an

21 | opposition against Garcia's joinder, but remained silent regarding Subia's joinder.   (Dkt. No.

22 |

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -3

01  43.)

02      The remaining defendants, mostly prison guards accused of direct retaliation, are not

03  party to the motion to dismiss.   Most joined in a separate answer to Plaintiff's complaint. (Dkt.

04  No. 21.)

05                          **II. Propriety of Joinder**

06      Plaintiff challenges the Defendants' attempted joinder of Garcia to the motion to

07  dismiss.   (Dkt. No. 43 at 1.)   Joinder in a motion after filing is appropriate when the addition

08  of new parties is timely and can be done without changing the motion's underlying legal

09  premises.   White v. Hegerhorst, 418 F.2d 894, 895 n.1 (9th Cir. 1969).

10      **A. Joinder of Garcia**

11      Plaintiff first asserts that Garcia's joinder was untimely.   (Dkt. No. 43 at 1.)   In an

12  order entered on March 31, 2010, the Court specifically granted Defendants an extension to

13  April 6, 2010 "to reply to Plaintiff's opposition . . . and to file their request to join [Garcia] to

14  their motion to dismiss or to their answer."   (Dkt. No. 37.)   Defendants complied, filing both

15  their request for joinder (Dkt. No. 40) and their reply to Plaintiff's opposition (Dkt. No. 39) on

16  April 6, 2010.   The requests were timely and will be considered.

17      Plaintiff also claims that Garcia "offers no factual basis that would permit a proper

18  weighing of the validity of standing to file her Motion to Dismiss."   (Dkt. No. 43 at 1.)   Like

19  Garcia, the motion's existing parties Reaves and Grannis are "policy making" prison officials.

20  (Dkt. No. 1 at 22.)   Garcia moves to dismiss on analogous grounds, and thus properly joined in

21  the motion to dismiss.

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -4

01          **B . Subia's Joinder**

02          Subia's joinder in the motion to dismiss was timely and Plaintiff did not challenge it.

03   Accordingly, Subia will be allowed to join in the motion to dismiss.

04                          **III. Motion to Dismiss**

05      **A. Timeliness of Plaintiff's Response to Defendant's Motion to Dismiss**

06          Defendants challenge Plaintiff's opposition to the motion as untimely.   (Dkt. No. 39 at

07   2.)   Plaintiff's response to the motion was filed on March 16, 2010.   However, it was due on

08   February 9, 2010.   On February 11, 2010, Plaintiff requested additional time to file the

09   response, but the Court did not respond before he filed the response.   (Dkt. No. 26.)   In their

10   reply brief, Defendants ask to strike Plaintiff's opposition because it was neither filed timely by

11   the original due date, nor by the requested extended date had the extension been granted.   (Dkt.

12   No. 39 at 2.)

13          Pro se plaintiffs in prisoner litigations are given latitude.   <u>McGuckin v. Smith</u>, 974 F.2d

14   1050, 1055 (9th Cir. 1992).   Courts must apply "considerable leeway when assessing whether

15   a <u>pro se</u> civil rights litigants' failure to comply strictly with time limits . . . should be excused for

16   "good cause," especially when that litigant is incarcerated."   <u>Id.</u> at 1058.

17          Here, the Court gave Defendants the opportunity to respond to Plaintiff's late response.

18   Defendants have not suffered any prejudice from Plaintiff's response and the Court declines to

19   strike it.

20          **B. Fed. R. Civ. P. 8(a)(2) Pleading Standard**

21          Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -5

01   the pleader is entitled to relief."   <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009) established a

02   two-prong test defining the pleading standard.   First, pleadings must not contain legal

03   conclusions unsupported by fact.   A claimant need not offer detailed factual support for his

04   claims, but must still make "a [factual] 'showing,' rather than a blanket assertion, of entitlement

05   to relief."   <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 n.3 (2007).   Second, if the

06   factual allegations are well-pleaded, "a court should assume their veracity and then determine

07   whether they plausibly give rise to an entitlement to relief."   <u>Iqbal</u>, 129 S. Ct. at 1950

08   (emphasis added).   A claim is facially plausible "when the plaintiff pleads factual content that

09   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

10   alleged."   <u>Id.</u> at 1955.

11       Both prongs of the <u>Iqbal</u> test must be satisfied for a pleading to survive a motion to

12   dismiss.   However, within this framework, <u>pro se</u> prisoner litigants' pleadings are construed

13   liberally.   <u>McGuckin</u>, 974 F.2d at 1055.

14       **i. Plaintiff's Claims Against Reaves, Grannis, and Garcia**

15       Plaintiff advances a First Amendment retaliation claim against Defendants Reaves,

16   Grannis, and Garcia.   To sustain such a claim, plaintiff must factually support "(1) an assertion

17   that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

18   protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

19   rights, and (5) the action did not reasonably advance a legitimate correctional goal."   <u>Rhodes v.</u>

20   <u>Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

21       Plaintiff claims that Reaves and Grannis "refused to even acknowledge any serious

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -6

01  violations of law . . . personally choosing to ignore the actions of [the other] defendants."

02  (Dkt. No. 1 at 22.)   This echoes his allegation that Grannis, as the Chief of Inmate Appeals,

03  was "responsible for establishing protocols and/or procedures, that, [sic] she/he knew was

04  causing the unconstitutional conditions of confinement," (id. at 7), and that he "cannot deny

05  [he] know[s]" of other defendants' reputation for retaliation."   (Id. at 15.)   Plaintiff uses

06  similar language in describing Reaves's duties.   (Id. at 8-9.)   Plaintiff further asserts that he

07  "battled with . . . Reaves and Grannis" to complete an administrative appeal.   (Id. at 25.)

08  These are Plaintiff's only mentions of Reaves or Grannis.

09      Taken in totality, these claims are factually insufficient to show either Reaves' or

10  Grannis' retaliatory intent.   Reaves and Grannis are implicated merely because they allegedly

11  knew of Plaintiff's plight.   This, as Defendants point out, (Dkt. No. 22 at 4-5), is insufficient to

12  meet Iqbal's first prong.

13      In his response to the motion, Plaintiff attempts to add additional facts supporting his

14  claims against Reaves and Grannis, (Dkt. No. 31 at 4-5), but they must be ignored because they

15  do not appear in his original complaint.   In their current state, Plaintiff's claims against Reaves

16  and Grannis are insufficiently plead, but the defects may be curable by amendment.

17      Plaintiff provides more allegations implicating Garcia, but they also fall short of Iqbal's

18  plausibility standard.   Plaintiff claims that, when appearing before an appeal committee

19  apparently recommending his release back into a program of higher privilege, Garcia "smiled

20  and stated she was retaining plaintiff in [administrative segregation], and would even send

21  plaintiff to a [special/secure housing unit] term if she wanted," in spite of his lack of

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -7

01  disciplinary history.   (Dkt. No. 1 at 24.)   Furthermore, Garcia allegedly stated that "plaintiff

02  could appeal the decision if he liked, since he was so good at litigating."   (Id.)   These actions,

03  Plaintiff argues, "show [Garcia's] retaliatory basis."   (Id.)

04          While they may hint at Garcia's retaliatory demeanor, the facts given are insufficient to

05  make the claim plausible.   Plaintiff essentially argues that Garcia's disagreement with the

06  appeal committee's recommendation is tantamount to retaliation.   He only supports this

07  conclusion with allegations that she "smiled" while doing so and impliedly used a sarcastic tone

08  to describe Plaintiff's appeal options.   Even when read in the light most favorable to Plaintiff,

09  there is insufficient factual substance to render the claim plausible under Iqbal or Twombly.

10  Like Plaintiff's claims against Reaves and Grannis, however, the defects in his claim against

11  Garcia are curable by amendment.

12                          **ii. Plaintiff's Claim Against Reyes**

13          The basis for Plaintiff's action against Reyes is unclear, though it bears resemblance to a

14  Fourteenth Amendment due process claim.   Plaintiff claims that Reyes "established policies

15  and procedures, that are designed to block, delay, and totally deny access to the prison [appeals]

16  process" with "intent to prevent plaintiff's access to the courts."   (Dkt. No. 1 at 33.)   To

17  support this assertion, he alleges that Reyes refused to process Plaintiff's group appeal on

18  behalf of several inmates because of an error on the form.   (Id.)   Plaintiff contends that he had

19  to submit the appeal twice more before the appeal was accepted, and that this delay in the

20  appeals process amounted to harm.   (Id.)   However, Plaintiff admits that the appeal was

21  eventually accepted; there was ultimately no deprivation of recognized rights.   Furthermore,

22

01   Plaintiff has not alleged any harm as a result of the delay.

02       Plaintiff neither asserts any recognized cause of action against Reyes nor has factually

03   shown a harm to be redressed.   However, Plaintiff will be given an opportunity to amend his

04   claims against Reyes.

05                 **iii. Plaintiff's Claims Against Subia and Tilton**

06       Plaintiff levels Eighth Amendment claims against Subia and Tilton.   When inhumane

07   prison conditions are alleged, the claim must first factually establish an extreme deprivation of

08   the "minimal civilized measure of life's necessities."   Hudson, 503 U.S. at 8-9.   "Routine

09   discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"

10   Id. at 9 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).   The plaintiff's factual

11   allegations must also support the inference that the accused prison official was conscious of,

12   and deliberately indifferent to, a substantial risk of harm to the prisoner.   Farmer v. Brennan,

13   511 U.S. 825, 847 (1994).   Furthermore, they must show that the official "disregard[ed] that

14   risk by failing to take reasonable measures to abate it."   Id.

15       Plaintiff offers several concrete examples of the deprivations he and his fellow prisoners

16   suffered, ostensibly as a result of the MCSP's policies.   For example, he argues that he has

17   been denied regular shower access, even in hot weather, due to his undeserved "A2B" privilege

18   classification.   (Dkt. No. 1 at 29-30.)   Within the context of the Hudson test, Plaintiff's

19   extreme deprivation claim initially meets the pleading standard.

20       However, that does not end the inquiry.   Farmer also requires Plaintiff to demonstrate

21   that the deprivation resulted from the deliberate indifference and inaction of the prison official.

22

01  <u>Farmer</u>, 511 U.S. at 847.  Plaintiff claims that Subia and Tilton "instructed staff to begin

02  denying A2B[-classified] inmates any programs outside their cells . . . [including] showers . . .

03  except on a very limited basis," (Dkt. No. 1 at 27); he complains that Tilton and Subia have

04  "constantly term[ed] showers a privilege, and not a right."  (<u>Id.</u> at 29.)  He asserts that Tilton

05  and Subia created the "A2B" privilege classification to "deny inmates all movement, showers,

06  phones, yard, dayroom, etc. [sic] on weekends, holidays, [sic] evenings."  (<u>Id.</u> at 26.)  He

07  reasons that Tilton and Subia created the "A2B" classification in response to prison

08  overcrowding; as a result, other "A2B" classified inmates are also being arbitrarily punished

09  because of overcrowding.  (<u>Id.</u> at 30.)  He cites Subia's internal memoranda to support his

10  assertion, though those memoranda are not on record.  (<u>Id.</u> at 34.)  Plaintiff contends that

11  Tilton and Subia are personally keeping him in the "A2B" privilege group, thus denying him

12  certain basic rights for no other reason than punishment for his ongoing litigation.  (<u>Id.</u> at

13  26-27.)  He claims that Subia was personally notified of the lack of, e.g., shower access by way

14  of his group appeal on behalf of other "A2B"-classified inmates, but Subia replied in writing

15  that no such denial of privileges was occurring.  (<u>Id.</u> at 35.)  Similarly, Plaintiff claims that he

16  "personally informed" Tilton of the deleterious effects of the "A2B" policy, but Tilton ignored

17  his complaints.  (<u>Id.</u> at 35-36.)

18          When taken in the light most favorable to Plaintiff, his claims against Subia and Tilton

19  are sufficiently pleaded.  By asserting Subia's response to his group appeal outlining the

20  deprivation, Plaintiff establishes that Subia was aware of the situation.  Plaintiff also claims

21  that he directly advised Tilton of the matter.  It is intuitive that as policymakers for the MCSP

22

01 and the CDCR, respectively, Subia and Tilton had the power to grant or deny shower access to

02 certain classes of the prison population.   However, in spite of their notice of the conditions and

03 their ability to improve them, Defendants failed to act and no improvement occurred.

04        Plaintiff plausibly demonstrates that he was both a) severely deprived of a basic human

05 need, and b) denied this need as a result of official inaction, thus meeting both <u>Farmer</u>

06 requirements for Eighth Amendment claims.   His claims against Tilton and Subia will not be

07 dismissed.

08        **C. Qualified Immunity**

09        Defendants also claim qualified immunity from suit.   (Dkt. No. 22 at 6.)   For Plaintiff

10 to overcome a government actor's qualified immunity from suit, he must prove two elements.

11 First, when taken in the light most favorable to the plaintiff, the facts must show that the official

12 conduct violated a constitutional right.   <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).   Second,

13 "the contours of that right must be sufficiently clear that a reasonable official would understand

14 that what he is doing violates that right."   <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

15        Qualified immunity need not be determined for Grannis, Reaves, Reyes, or Garcia, as

16 Plaintiff failed to assert any valid constitutional claims against them.

17        For Tilton and Subia, Plaintiff's claims sufficiently allege that a constitutional right was

18 withheld as a direct result of Tilton and Subia's policies or inaction, satisfying the first prong of

19 the qualified immunity test.   Thus, the inquiry turns on whether Tilton and Subia could have

20 reasonably believed that their actions violated a constitutional right.   Plaintiff directly apprised

21 both Tilton and Subia of the deprivation of basic necessities resulting from their policies.   As

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -11

01  previously noted, the alleged deprivations are severe, and the policies assumedly promulgated

02  by Tilton and Subia can be directly connected to a withholding of constitutional rights.

03  Assuming these allegations are all true, it is plausible that Tilton and Subia understood their

04  actions to be constitutionally invalid.   As a result, Plaintiff sufficiently fulfills both prongs of

05  the qualified immunity test, and neither Tilton nor Subia are entitled to qualified immunity.

06  **D. State Law Claims**

07  The Defendants' reply to Plaintiff's opposition attempts to move the Court to also

08  dismiss Plaintiff's state causes of action against Tilton.   (Dkt. No. 39 at 4-5.)   However,

09  Defendants never discussed state law in their original motion to dismiss; they only addressed

10  Plaintiff's First and Eighth Amendment claims.   Just as Plaintiff is disallowed from stating

11  new facts or causes of action in his response, Defendants are barred from adding new

12  challenges in their reply.   Plaintiff's state law claims will not be dismissed.

13  \\

14  \\

15  \\

16  \\

17  \\

18  \\

19  \\

20  \\

21  \\

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS

01                              **IV. Conclusion**

02          Defendants' motion to dismiss Plaintiff's claims against Reaves, Grannis, Garcia, and

03   Reyes is GRANTED without prejudice.   Plaintiff must file his amended complaint with this

04   Court no later than September 20, 2010.   Defendants' motion to dismiss Plaintiff's claims

05   against Subia and Tilton is DENIED.   All unaddressed state law and Fourteenth Amendment

06   claims remain intact against all parties.

07          The Clerk is ordered to distribute copies of this Order to all counsel and mail a copy to

08   Plaintiff.

09          Dated: August 19, 2010.

10

11

12                                              Marsha J. Pechman
                                                United States District Judge
13

14

15

16

17

18

19

20

21

22

ORDER PARTIALLY GRANTING DEFENDANT'S MOTION
TO DISMISS
PAGE -13