UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

THOMAS HIGHTOWER,

        Plaintiff,

v.

JAMES TILTON, et al.,

        Defendant.

CASE NO. C08-1129

ORDER ON MOTIONS

The above-entitled Court, having received and reviewed

1. Plaintiff's Motions for Court Order Directing Prison Law Library to Place Plaintiff on the Priority User List (Dkt. Nos. 11 and 19), Defendants' Response (Dkt. No. 54) and Plaintiff's Reply (Dkt. No. 57);

2. Plaintiff's Motion to Compel Defendants to Cooperate in Service of Complaint and Summons/Motion for TRO-Preliminary Injunction and Protective Order (Dkt. No. 20), Defendants' Response (Dkt. No. 56), and Plaintiff's Reply (Dkt. No. 58);

3. Plaintiff's Motion for Entry of Default Against Defendants for Failure to Timely Oppose Plaintiff's Two Motions for Injunctive Relief (Dkt. No. 44)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that the motions are DENIED.

As will be discussed in detail below, Plaintiff is not entitled to the various forms of injunctive relief he seeks. In issuing this denial of Plaintiff's request for cooperation in the service of his summonses, however, the Court assumes (based on Defendants' responses) that the California Department of Corrections and Rehabilitation (CDCR) no longer employs the two Defendants (Carillo and Fierson) who have not yet been served. Plaintiff is directed to resubmit his request to the Public Records Act Information Desk/Officer; if either of the two unserved defendants is currently employed by CDCR, the Court trusts that information regarding their job address is available to Defendants and will be provided to Plaintiff. If they are no longer employed by CDCR, Defendants are not responsible for locating these two individuals for Plaintiff.

**Background**

This is a lawsuit (brought under § 1983 and various state statutes) by a California inmate seeking declaratory and injunctive relief from what he alleges as retaliation for his litigation against the prison system; included in this complaint is an attack on the constitutionality of the administrative classification which he alleges has been illegally created and manipulated to interfere with his right to access the courts.

What Plaintiff primarily seeks through these motions is protection against further retaliation while he prosecutes this federal case and two other pending state lawsuits. The actions he alleges as retaliatory are:

- Cell searches which target his legal materials
- Transfers to maximum security institutions unwarranted by his classification level (during which his legal materials are inaccessible and sometimes destroyed)
- Assignments (or, currently, *threats* of assignments) of cellmates who will disrupt his legal work.

- Manipulation (i.e., withholding) of needed medical attention (Plaintiff states that he is disabled and suffers from chronic pain)

Additionally, Plaintiff wants to be permanently assigned (for the duration of this case) Priority Library User (PLU) status and also to be exempted from class/work assignments which occur at the same time as library hours (during the weekdays).

Plaintiff requests unspecified "protection" for his cellmate (Mr. Tarpley) and other (unidentified) inmate witnesses. He also has been unsuccessful in obtaining the addresses of the two remaining unserved defendants (Carillo and Fierson) and wants CDCR ordered to provide that information.

**Discussion/Analysis**

Although Plaintiff has filed a multitude of motions, all of his requests (with the exception of the discovery request related to the two unserved Defendants) seek some form of injunctive relief. The current standard for the granting of injunctive relief is found in <u>Winter v. Natural Resources Defense Council</u>, 129 S.Ct. 365, 374 (2008):

> A plaintiff seeking preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction in the public interest.

Furthermore, Plaintiff is not seeking to preserve the status quo by his request (*prohibitory* relief), he wants the prison ordered to do things differently than he alleges they are being done currently; i.e., Plaintiff seeks *mandatory* injunctive relief. Such relief is "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." <u>Dahl v. HEM Pharmaceuticals Corp.</u>, 7 F.3d 1399, 1403 (9th Cir. 1993).

One of the overarching problems with Plaintiff's request is that he has made no effort to establish his likelihood of prevailing on the merits of his case. Some of the activities that he seeks to address by these motions are the same as those alleged in his complaint (e.g., allegedly

1   illegal transfers and retaliatory cell searches), but they are not factually the same incidents as
2   recounted in his complaint (merely the same alleged policies) and it appears that Plaintiff may
3   not understand that he is not entitled to injunctive relief of any kind absent a showing that he has
4   a probability of success (a <u>high</u> probability, given that he wants mandatory injunctive relief) on
5   the claims in his complaint.  His briefing contains no discussion of this element and on that basis
6   alone the Court could deny the motions.

7         Another overall problem with Plaintiff's motions is that much of what he seeks to prevent
8   is speculative – he writes of the "threat" of being celled with another disruptive prisoner or his
9   fear of being transferred to another maximum security institution, neither of which are currently
10  happening or scheduled to happen.  These are not presently occurring (or imminent) harms; he is
11  just trying to prevent them from happening again.  A plaintiff must demonstrate "immediate
12  threatened harm" (<u>Caribbean Marine Services Co., Inc. v. Baldrige</u>, 844 F.2d 668, 674 (9th Cir.
13  1988)); establishing a risk of harm in the indefinite future will not suffice.  <u>Church v. City of
14  Huntsville</u>, 30 F.3d 1332, 1337 (11th Cir. 1994).

15        Plaintiff seeks injunctive relief based on allegations of a continuous pattern of retaliation
16  against him, most recently for his attempts to obtain the addresses of Carillo and Fierson, the two
17  as-yet unserved defendants.  By way of factual support, he cites two cell searches which
18  occurred approximately 20 days apart in November and December 2009.  But the fact is that the
19  prison officials are permitted by law to conduct random searches of the inmates' cells (Title 15,
20  § 3287(a)(1) [2010]).  Defendants claim, and Plaintiff doesn't controvert, that cell searches at 20-
21  day intervals are not unusual in the prison routine.  While Plaintiff complains about confiscation
22  of items such as paper clips, he does not claim that any of his legal materials were destroyed or
23  confiscated.  Interestingly, in his reply in support of his motions (filed in November 2010) he
24

1  does not allege further instances of cell searches since the incidents of a year before.  These
2  motions are directed primarily towards "prospective" relief: i.e., the prevention of alleged harms
3  which, based on past experience, Plaintiff believes are going to happen again.  These are not the
4  sort of harms which the current legal standards for injunctive relief encompass.

5  Ironically, another fact which undercuts Plaintiff's "irreparable injury" claim is his
6  motion practice itself.  While he claims that he is being denied access to the library and access to
7  the courts, he has filed a multitude of motions and reply briefs (plus an amended complaint), all
8  of which are extensively researched with copious legal citations.

9  The Court now turns to an examination of Plaintiff's individual requests for injunctive
10 relief:

11  *1.  Single cell status*

12  This is Plaintiff's attempt to address the "threats" that he will be celled with a disruptive
13 inmate.  There is no allegation that his current cellmate is disruptive or that he has information
14 that he is about to be assigned a disruptive cellmate.  The harm is speculative and Plaintiff
15 provides no authority that empowers the Court to order the prison to single-cell him under these
16 circumstances.  Courts are not prohibited from interfering with prison procedure, but Plaintiff
17 cites  no authority that a court may do so without proof of unconstitutional or illegal conditions,
18 neither of which Plaintiff has provided.

19  *2.  No further transfers to other institutions*

20  As above, there is no proof that this is an imminent likelihood, therefore there is no harm
21 that is cognizable in an injunctive proceeding.  Further, Plaintiff seeks relief which far exceeds
22 the "boundaries" of this case (he requests that the prohibition against transfers be instituted for

23

24

the remainder of his life sentence) – again, absent proof of unconstitutionality or illegality, the Court has no authority to order such a permanent revision to Plaintiff's status.

> 3. *An exemption from the statutory limit on the amount of legal materials he can possess in his cell, plus the amount of equipment (typewriter, etc.) he can keep there*

Inmates are limited by California law (Title 15, § 3616 [2010]) to

> "one cubic foot of legal materials/documents related to their active cases, in excess of the six cubic feet of allowable property in tier assigned quarters/living areas.  Legal materials/documents, law books and papers in excess of this limitation shall be disposed of pursuant to section 3191(c).  Inmates may request the institution/facility store excess legal materials/documents related to their active cases(s) when such materials/documents exceed this one cubic foot additional allowance."

Plaintiff makes no argument that this regulation is unconstitutional or otherwise defective; he simply wants to be exempted from it.  He provides (1) no authority that this Court has the power to do that and (2) no evidence that he has requested to have Mule Creek State Prison (MCSP) store his excess materials.

> 4. *Providing Plaintiff with ongoing proper medical care (he alleges that manipulation of needed medical care is a retaliatory tool of the prison)*

This is another speculative injury/prospective remedy request.  Plaintiff makes no allegation of any actual incidents of denial or withholding of medical care.  There is no showing of imminent irreparable harm.

> 5. *Provide Plaintiff ongoing "Priority Library User" (PLU) status (this apparently includes an order exempting him from work/classroom assignments, as these occur at the same times during the weekday that the library is open)*

Defendants provided evidence in the form of the MCSP Library log from June 2009 to October 2010 that Plaintiff was granted PLU status numerous times (and in fact used the library for a total of 214 hours during that period).  For his part, Plaintiff provides no evidence that he has requested and been refused PLU status.  Again, there is no showing of irreparable injury or a

ORDER ON MOTIONS- 6

situation where the status quo needs to be altered. Additionally, Plaintiff has requested and been granted appointed counsel to assist him in this litigation; the Court presumes that this will result in a decreased need for access to legal research facilities.

*6. Sanctions for Defendants' bad faith conduct*

Nothing Plaintiff has alleged rises to a level of bad faith, malice or illegality that warrants the imposition of sanctions.

*7. A third-party "protective order"*

Plaintiff's last injunctive relief request is for a "protective order" for his current cellmate (Mr. Tarpley) and for Plaintiff's other (unidentified) inmate witnesses. He does not specify in any detail what protection is being sought or why protection is needed, nor does he cite any authority for his standing to request injunctive relief for third parties. The Court will not entertain such a request.

In addition to the injunctive relief request, Plaintiff has also moved to compel Defendants to cooperate in providing him the locations of the two as-yet unserved defendants, Carillo and Fierson. Defendants claim that they received no request for information regarding the whereabouts of either party, and that the Litigation Office at MCSP had informed the Marshal that "Carillo and Fierson are not currently employed at MCSP, and MCSP had no forwarding address for either." Dkt. No. 56, p. 3. Plaintiff presents evidence of a letter dated November 18, 2009 to the "Public Records Act Information Desk/Officer" requesting information on their whereabouts. Dkt. No. 20, p. 20. Plaintiff is directed to resubmit that request; if either of the two unserved defendants is currently employed by CDCR, the Court trusts that information regarding their job address is available to Defendants and will be provided to Plaintiff. If they

are no longer employed by CDCR, Defendants are not responsible for locating these two individuals for Plaintiff.

There is one remaining motion to address. In April 2010 (before the Court set the briefing schedule for all Plaintiff's motions) Plaintiff filed a motion for "default," arguing that his injunctive relief should be granted because the government had not responded to his pleadings. In light of the fact that the Court ultimately set a briefing schedule for these motions, that all parties timely filed their pleadings in accordance with that schedule, and that the Court is issuing this ruling on those motions, Plaintiff's request for default is moot and will be denied.

**Conclusion**

In conclusion, Plaintiff has made no showing of likelihood of prevailing on the merits of his claims, nor has he demonstrated that he is under danger of imminent irreparable harm. He has failed to demonstrate, either with evidence or legal authority, that any of the activities he is complaining of are illegal or outside the bounds of recognized authority of the prison to police their population.

The clerk is ordered to provide copies of this order to Plaintiff and to all counsel.

Dated this _5th__ day of January, 2011.

_/s/ Marsha J. Pechman_

Marsha J. Pechman
United States District Judge