

01

02

03

04

05

06

07 UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

08

THOMAS A. HIGHTOWER,                    )
09                                       )    CASE NO. C08-1129 - MJP
        Plaintiff,                       )
10                                       )
        v.                               )    ORDER RE: MOTION TO DISMISS
11                                       )    SECOND AMENDED COMPLAINT
JAMES TILTON, et al.,                    )
12                                       )
        Defendants.                      )
13                                       )
_____  )

14

        The above-entitled Court, having received and reviewed

15

    1.  Defendants' Motion to Dismiss (Dkt. No. 78)

16

    2.  Plaintiff's Opposition to Defendants' Third Motion to Dismiss (Dkt. No. 80)

17

    3.  Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt.

18

        No. 82)

19

and all accompanying exhibits and declarations, makes the following ruling:

20

        IT IS ORDERED that Defendants' motion will be PARTIALLY GRANTED and

21

PARTIALLY DENIED, as delineated below:

22

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -1

01    1.  **Count 1:** DENIED as to Defendants Bunnell, Campbell, Fox, Griffin, Gutierrez,

02        Huerta-Garcia, Lewis, Montanez, Rodriguez, Subia, and Tilton; GRANTED as to the

03        remaining Defendants.

04    2.  **Count 2:**  DENIED as to Defendants Bunnell, Campbell, Fox, Griffin, Gutierrez,

05        Huerta-Garcia, Lewis, Montanez, Rodriguez, Subia, and Tilton; GRANTED as to the

06        remaining Defendants.

07    3.  **Count 3:**  GRANTED in its entirety; this count is DISMISSED.

08    4.  **Count 4:**  DENIED as to Defendants Bunnell, Campbell, Montanez, Subia, and

09        Tilton; GRANTED as to the remaining Defendants.

10    5.  **Count 5:**  DENIED as to Defendants Bunnell, Campbell, Montanez, Subia, and

11        Tilton; GRANTED as to the remaining Defendants.

12    6.  **Count 6:**  DENIED as to Defendants Griffin, Montanez, Mwangi, Rodriguez and

13        Subia; GRANTED as to the remaining Defendants.

14    7.  **Count 7:** DENIED as to Defendants Griffin, Montanez, Mwangi, Rodriguez and

15        Subia; GRANTED as to the remaining Defendants.

16    8.  **Count 8:** DENIED as to Defendant Grannis; GRANTED as to the remaining

17        Defendants.

18    9.  **Count 9:** DENIED as to Defendant Grannis; GRANTED as to the remaining

19        Defendants.

20    10. **Count 10:** DENIED in its entirety.

21    11. **Count 11:** DENIED as to Defendants Campbell, Fox, Grannis, Griffin, Gutierrez,

22        Huerta-Garcia, Montanez, Reaves, Reyes, Rodriguez, Subia, and Tilton; GRANTED

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -2

01        as to the remaining Defendants.

02        IT IS FURTHER ORDERED that leave to amend is DENIED.

03        IT IS FURTHER ORDERED that Defendants must file their answer to Plaintiff's

04 Second Amended Complaint within 14 days of the filing of this order; upon Defendants'

05 filing of their answer, a Discovery and Scheduling order will issue.

06 **Procedural Background**

07        Plaintiff has filed an original and a First Amended Complaint (FAC) *pro se* – both

08 have been subject to motions to dismiss and have survived but with orders to amend.   Just

09 prior to the ruling on the FAC, this Court appointed counsel (Mark Walters and Dario

10 Machleidt) to assist Plaintiff.

11        The Court also ordered the U.S. Marshal's Office to serve copies of Plaintiff's

12 complaint on the named defendants.  To date, 15 defendants have been served and appeared.

13 Defendants Carrillo and Fierson have not been served. The Process Receipt form filed for the

14 unserved defendants indicates three attempts to serve them and reports that they are no longer

15 employed by California Department of Corrections and Rehabilitation (CDCR).  CDCR has

16 no forwarding address for them.  Dkt. No. 14.

17 **Factual Background**

18      Plaintiff has eleven causes of action and alleges federal and state claims.  The claims arise

19 from a series of allegations summarized below (all citations are to the Second Amended

20 Complaint [SAC]; Dkt. No. 77).  Plaintiff alleges that:

21      • He was placed in Administrative Segregation ("Ad-Seg" a/k/a solitary confinement) –

22          allegedly for threatening a prison nurse, but actually in retaliation for his vigorous

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -3

01    litigation against the prison system and for his legal assistance to other inmates.  ¶¶

02    35-59.

03    • Although the Institution Classification Committee (ICC) concluded that his Ad-Seg

04    placement was in error, that determination was overruled by Defendant Huerta-Garcia

05    and he was retained in Ad-Seg for approximately seven weeks, again in retaliation for

06    his litigation efforts. ¶¶ 60-73.

07    • While in Ad-Seg, he was denied the use of his cane (which he required for mobility

08    and exercise) and his Bible.  ¶¶ 40-41.

09    • While in Ad-Seg, he was denied the use of an extra mattress and pillow, which he

10    required due to pre-existing spinal injuries.  ¶¶ 103-110.

11    • Following his assignment to Ad-Seg, his seizure, heart, pain, and stomach medications

12    were confiscated; no replacement medications were issued for several days.  A month

13    later, his medications were confiscated again.  ¶¶ 97-102.

14    • Between March and June 2006, Plaintiff's property (including legal materials for cases

15    against CDCR and Mule Creek State Prison [MCSP]) was destroyed by Defendants in

16    retaliation for his litigation activity. There were additional threats that, if Plaintiff did

17    not consent to the destruction of his property, his legal materials would be sent to

18    certain Defendants to read. ¶¶ 112-119.

19    • Following his release from Ad-Seg, Plaintiff was classified in an "A2B prisoner

20    classification privilege group."   The A2B classification does not exist in the

21    California Code of Regulations; it is an "underground policy" created by Defendants

22    Subia, Tilton, Campbell, Bunnell and others (unnamed).  On the basis of that

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -4

01    classification, Plaintiff was denied access to showers, exercise, the yard, the dayroom,

02    religious functions (including prayer group and Bible study), the phone and the law

03    library on weekends, holidays and evenings.  His 2007 Administrative Group Appeal

04    and a further individual challenge to the A2B classification were denied.

05    Additionally, Plaintiff personally informed Defendant Tilton of the unconstitutional

06    nature of the A2B policy.  Plaintiff remained in A2B classification for approximately

07    4 years.  ¶¶ 121-149.

08    **Discussion/Analysis**

09    This order will first address the global issues that affect all of Plaintiff's claims, then

10    proceed to an analysis of the motion to dismiss the individual claims.

11    *The unserved defendants*

12    Of the 17 named defendants, two remain unserved – Carrillo and Fierson.  Plaintiff

13    maintains that Carrillo is a current employee of the CDCR whom the United States Marshal

14    should have served with the original complaint.  Mr. Hightower also claims he is not

15    responsible for Defendant Carrillo not yet being served, and, "accordingly, Defendant Carrillo

16    should be deemed present in this case."  SAC, ¶ 16.

17    Plaintiff reiterates his position concerning Carrillo in his responsive pleadings

18    (Response, p. 11 fn. 6) as part of his argument concerning his 8th Amendment claims.  He

19    cites no authority for the position.  The Court is not bound by the conclusory allegations of his

20    complaint concerning Carrillo's employment status: the "Process Receipt and Return" from

21    the Marshals Service (filed in the court record; *see* Dkt. No. 14) indicates that three attempts

22    were made to serve Carrillo (and Fierson) and that the CDC locator no longer had them in the

01  system as of October 23, 2009.

02       As neither Carrillo nor Fierson has appeared and moved for dismissal, this Court has

03  no jurisdiction over them and this order will have no effect as to them.  By the same token,

04  however, Plaintiff cannot use his allegation that Defendant Carrillo forced him to walk a mile

05  to Ad-Seg without his cane (¶ 75) to support his 8th Amendment claims (unless he had

06  alleged – as he does not – that other supervisory Defendants were aware of Carrillo's alleged

07  action and either authorized or condoned it).

08  *Supervisory liability*

09       Defendants argue that the "supervisory Defendants" (Huerta-Garcia, Reyes, Reaves,

10  Grannis, Campbell, Subia and Tilton) "cannot be held liable based on knowledge and

11  acquiescence in a subordinate's unconstitutional conduct because government officials,

12  regardless of their title, can only be held liable under Section 1983 for his or her own conduct

13  and not the conduct of others."  Motion, p. 12.  This is a partial and inaccurate statement of

14  the law.

15           A supervisor is only liable for constitutional violations of his subordinates if
             the supervisor participated in or directed the violations, <u>or knew of the</u>
16           <u>violations and failed to act to prevent them</u>. There is no *respondeat superior*
             liability under section 1983. <u>Ybarra v. Reno Thunderbird Mobile Home</u>
17           <u>Village</u>, 723 F.2d 675, 680-81 (9th Cir. 1984).

18  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (emphasis supplied).

19       The supervisory Defendants may be held liable for the unconstitutional conduct of

20  their subordinates which they were aware of and failed to prevent.  Defendants are correct,

21  however, that a causal link between the supervisors and the unconstitutional actions or

22  policies must be specifically alleged.  <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979).

01    *"On information and belief"*

02        In arguing that Plaintiff has not specifically alleged actions by these Defendants with a

03   causal link to the constitutional/statutory violations, Defendants treat all of his allegations "on

04   information and belief" as conclusory and/or speculative.  In fact, the rule in the Ninth Circuit

05   is that pleading "on information and belief" is sufficient to survive a motion to dismiss as long

06   as the other Iqbal-Twombly factors are satisfied.

07            The Ninth Circuit has established that in determining a motion to dismiss for
             failure to state a claim, it is sufficient. . ." 'even if the claim is based on
08           nothing more than a bare allegation that the individual officers' conduct
             conformed to official policy, custom, or practice.' " Karim-Panahi v. Los
09           Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988) (quoting Shah v.
             County of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986))…And, pursuant to
10           Karim-Pahani, 839 F.2d at 624, Plaintiffs' allegation based on information and
             belief is sufficient to survive a motion to dismiss.

11

12   Cerros v. North Las Vegas Police Dept., 2008 WL 608641, *10 (D. Nev., 2008).

13        *See also* Intravisual Inc. v. Fujitsu Microelectronics America Inc., 2011 WL 1004873,

14   *5 (E.D.Tex., 2011):

15           The Court holds that allegations pled on "information and belief" should be
             reviewed in the same way as all factual allegations in a Complaint. That is, the
16           Court will review them under Twombly's 12(b)(6) formulation requiring
             sufficient facts pleading to make a claim plausible. The mere fact that
17           allegations begin with the statement "on information and belief" will not
             automatically render them insufficient.

18   *State law claims (California Constitution and statutory violations): procedural attacks*

19        Substantively, Plaintiff's state constitutional claims will survive or fail alongside his

20   federal constitutional causes of action (he alleges 1st Amendment [speech and religion], right

21   to petition for redress/access to the courts, 8th Amendment [cruel and unusual punishment]

22

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -7

01  and due process violations on both state and federal grounds).

02       Procedurally, however, Defendants attack his state claims for failure to comply with

03  the California Tort Claims Act (CTCA), which prohibits civil lawsuits against any public

04  employee unless the complaint alleges that Plaintiff has already submitted a written claim to

05  the CA Victim Compensation Board in accordance with CA Gov Code §§ 905, 911.  This

06  argument fails for two reasons:

07       1.  Plaintiff does allege that he complied with the CTCA.  SAC, ¶ 6.  Defendants argue,

08            without citation to authority, that the absence of <u>specific</u> facts (presumably dates,

09            claim numbers, etc.) is a fatal flaw.  The Court fails to see why, like all the other

10            factual allegations at the motion to dismiss stage, this allegation of CTCA compliance

11            is not entitled to a presumption of validity.

12       2.  The CTCA is inapplicable to claims for declaratory or injunctive relief.  <u>Taggart ex</u>

13            <u>rel. Perry v. Solano County</u>, 2005 WL 332572, *4 (E.D.Cal., December 6,

14            2005)(quoting CA Gov. Code § 905).  Thus, Plaintiff's claims for non-monetary relief

15            would survive even if he had not complied with the CTCA.

16       Defendants make another argument for dismissal of Plaintiff's state constitutional

17  claims: namely, that the California Supreme Court has ruled that no actions for damages will

18  lie for due process, cruel and unusual punishment, freedom of speech and access to the courts

19  claims.  <u>Katzberg v. Regents of University of California</u>, 29 Cal. 4th 300, 329 (Cal. 2002).

20  That court has not determined whether damages are applicable in religious freedom cases and

21  Defendants argue that the Court should abstain from ruling on that issue until it has been

22  addressed by the state's highest court.

01     But Plaintiff seeks equitable damages concerning his claims of state constitutional

02 violations, which under California law he is permitted to do.  *See* Giraldo v. Calif. Dept. of

03 Corr. & Rehab., 168 Cal.App.4th 231, 257 (2008).  Plaintiff's state law claims are not subject

04 to dismissal on procedural grounds.

05 *1st Amendment (freedom of speech), retaliation, access to courts (Claims I, II and II)*

06     **Retaliation**

07     An inmate claim of retaliation under the 1st Amendment consists of the following

08 elements:

09     1.  A prison official (or officials) taking adverse action against the inmate;

10     2.  Because the inmate engaged in protected conduct;

11     3.  Thereby chilling the inmate's exercise of 1st Amendment rights; and

12     4.  The adverse action had no legitimate penological purpose

13 Rhodes v. Robinson, 408 F.3d 559, 568-69 (9th Cir. 2005).

14     Plaintiff alleges a series of adverse actions -- his placement (and retention) in Ad-Seg

15 (¶ 46), the destruction of his property and legal materials (¶ 114), his classification in the

16 restrictive A2B privilege group (¶ 139) – and alleges that these were done in retaliation for his

17 litigation activity and legal assistance provided to other inmates.

18     Defendants argue that there are no "facts" tying the adverse actions to a retaliatory

19 motive, but the Court is aware that it is rare to be handed a "smoking pistol" in a retaliation

20 situation, and some of Plaintiff's allegations (e.g., the rejection by Defendant Huerta-Garcia

21 of the ICC's conclusion that Ad-Seg was not warranted in his case) create a plausible

22 inference that there was a non-legitimate motive behind much of what he alleges befell him

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -9

01 during this period.

02     Plaintiff also asserts that there was no legitimate penological purpose (¶ 32), which is

03 adequate given that the facts underlying Defendants' actions regarding Plaintiff are within the

04 knowledge and control of the prison officials themselves. "Pleading facts based on

05 information and belief… is permitted when the facts are peculiarly within the control of the

06 defendant. *See* Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2nd Cir.)." Stimson

07 Lumber Co. v. International Paper Co., 2010 WL 5186752, *2 (D.Mont., 2010).

08     Plaintiff demonstrates that his exercise of his 1st Amendment rights was chilled by the

09 adverse actions by pleading that he was deterred from initiating contemplated lawsuits by his

10 placement and retention in Ad-Seg (¶ 52).

11     However, Plaintiff's SAC runs into difficulty by virtue of its lack of specificity:

12         A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable
13         for the misconduct alleged. *(citation omitted)*

14 Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

15     Taking the factual allegations that comprise his retaliation claims and cross-checking

16 against the Defendants for a "plausible" connection between the individual and the conduct

17 alleged yields the following results:

18     • *Placing/retaining Plaintiff in Ad-Seg*

19         o **Plausible**: Defendant Huerta-Garcia (by virtue of her overruling the ICC's

20             recommendation that the Ad-Seg referral be terminated); Defendant Rodriguez

21             (Ad-Seg correctional officer)

22

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -10

- *Destruction of legal materials*

    o **Plausible**: Defendant Montanez (Ad-Seg property officer); Defendant Rodriguez (Ad-Seg correctional officer)

- *A2B classification*

    o **Plausible**: Defendants Tilton, Subia, Campbell, Bunnell (allegedly created the A2B classification [¶ 122]; allegedly "instructed their staff to deny A2B-classified inmates any programs outside their cells on weekends, holidays, and evenings" [¶123]; allegedly denied Plaintiff's 2007 Administrative Group Appeal [¶¶ 128-129]; Defendant Tilton allegedly informed by Plaintiff of the unconstitutional nature of A2B [¶131])

Plaintiff's SAC has no allegations giving rise to a reasonable inference that Defendants Grannis, Mwangi, Reaves and Reyes are liable for retaliating against him.  Counts I and II will be DISMISSED as to them.

**Access to courts/right to petition**

Defendants are correct: Plaintiff has not plead this claim adequately.  Plaintiff alleges that he has been frustrated by the actions of Defendants both in the prosecution of pending lawsuits (¶ 42) and anticipated litigation (¶¶ 51-52); what the cases refer to as "backward-looking" claims and "forward-looking" claims, respectively.  The seminal Supreme Court case on the subject, Christopher v. Harbury, says this:

> …even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a "nonfrivolous," "arguable" underlying claim [Lewis v. Casey, 518 U.S. 343, 353, n.3 (1996)], and we have been given no reason to treat backward-looking access claims any differently in this respect. It follows that the underlying cause of action, whether

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -11

01    <u>anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.</u> It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not

03    otherwise available in some suit that may yet be brought.

04 <u>Christopher v. Harbury</u>, 536 U.S. 403, 415, 122 S.Ct. 2179, 2187 (2002)(emphasis supplied).

05       Plaintiff's allegations are completely deficient in this regard. He speaks generically of

06 "pending lawsuits" and "contemplated lawsuits" without identifying a single specific cause of

07 action, and therefore the Court has no ability to evaluate whether the alleged lawsuits

08 (pending or anticipated) were "nonfrivolous." Plaintiff argues that the fact that the cases were

09 pending means that they had passed a screening process (required in *pro se* prisoner filings)

10 and therefore were non-frivolous *per se*, but cites no authority for the position. The Court

11 doubts that what the Supreme Court contemplated in <u>Christopher</u> was that an inmate simply

12 had to allege that a lawsuit was pending to satisfy the requirement that it be "nonfrivolous"

13 and "arguable."

14       Defendants' motion to dismiss Plaintiff's "access to courts/right to petition for

15 redress" elements of Claims I, II and III is GRANTED. Count III is dismissed in its entirety.

16 *<u>1st Amendment: Freedom of religion (Claims IV and V)</u>*

17       Sufficiently pleading a violation of this 1st Amendment right requires a prisoner to

18 demonstrate that he has a "sincerely-held belief that is rooted in religion" (<u>Shakur v. Schriro</u>,

19 514 F.3d 878,884 (9th Cir. 2008) and that the burden to that belief is more than an

20 inconvenience or an isolated short-term occurrence. <u>Harris v. Schriro</u>, 652 F.Supp.2d 1024,

21 1033-34 (citing <u>Freeman v. Arpaio</u>, 125 F.3d 732, 737 (9th Cir. 1997)).

22       Defendants attempt to defeat this claim by arguing that Plaintiff's pleadings fail to

01  satisfy the factors relating to the circumstances under which a prison may curtail free-exercise

02  rights to achieve legitimate correctional goals or maintain prison security.  Those factors are

03  found in Turner v. Safley (482 U.S. 78 (1987)) and include (1) a valid, rational connection

04  between the regulation and the justification; (2) an alternative means to exercise the right; (3)

05  whether accommodating the right would impact staff, other inmates or prison resources; and

06  (4) whether ready alternatives are absent.  Id. at 90.  But Turner is not an FRCP 12(b)(6) case

07  and the Eastern District of California has previously held that it is inappropriate to require a

08  complaint to address those factors at the motion to dismiss stage.  Dunn v. Castro, 2008 WL

09  544562, *2 (E.D.Cal. Feb. 26, 2008).

10      Plaintiff states in the SAC that he "holds sincere religious beliefs" (¶ 41); nothing

11  more is required to establish that factor at this stage.  Plaintiff's allegations regarding the

12  burden on those beliefs fall into two categories: (1) the confiscation of his Bible during his

13  tenure in Ad-Seg and (2) his exclusion from Bible study and worship services as a result of

14  his A2B classification.

15      **Confiscation of the Bible**

16      Plaintiff is not required to show that the complained-of conduct "impinges on a central

17  tenet of his faith… only that it impedes the exercise of a sincerely held religious belief."

18  Rouser v. White, 630 F.Supp.2d 1165, 1187 (E.D.Cal. 2009)(citing Shakur, 514 F.3d at 885).

19  Plaintiff's allegation that his Bible was confiscated adequately pleads an impedance to the

20  exercise of his religious beliefs.  And his seven-week confinement in Ad-Seg unquestionably

21  constitutes a deprivation that is neither short-term nor a mere inconvenience.

22      Plaintiff's problem, once again, is in satisfying the Iqbal requirement of "factual

01   content that allows the court to draw the reasonable inference that the defendant is liable for

02   the misconduct alleged." 129 S.Ct. at 1949.  He alleges that Defendants Griffin, Gutierrez,

03   Lewis, Mwangi, Huerta-Garcia, Montanez, Rodriguez, and Fox denied him the use of his

04   Bible.  Huerta-Garcia and Mwangi will be dismissed from this claim outright: there is no

05   allegation that Huerta-Garcia ordered anyone to confiscate the Bible[1] or deny Plaintiff its use

06   and it is not plausible that Defendant Mwangi (a nurse) had anything to do with any decision

07   regarding Plaintiff's reading material.

08          It is plausible that Defendant Montanez, as the Ad-Seg property officer, retained

09   possession of the confiscated Bible, thereby denying Plaintiff its use.  The remaining named

10   defendants are all in the correctional officer chain of command, but Plaintiff provides no

11   factual content to connect a specific defendant to the alleged conduct.  The motion to dismiss

12   this count will be GRANTED as regards the remaining defendants.

13          **A2B and group religious services**

14          Plaintiff adequately pleads an unconstitutional burden on the exercise of his religious

15   beliefs during his A2B classification by Defendants Tilton, Subia, Bunnell and Campbell.  He

16   re-alleges his "sincerely held religious beliefs," among which is "the need to participate in

17   group worship."  ¶ 126.  He alleges that Tilton, Subia, Bunnell and Campbell instructed their

18   staff to deny A2B inmates any programs outside their cells on weekends, holidays and

19   evenings.  ¶ 123.  And, finally, he alleges that, as a result of this policy, he was denied access

20   to religious services and group prayer services that only occur on weekends.  ¶ 125.  Further,

21   _____

22   [1] Plaintiff argues that it is "reasonable to infer" that the correctional officers were implementing an Ad-Seg policy promulgated by their supervisors which prohibited Ad-Seg detainees from possessing religious texts. Response, p. 7.  It is not reasonable to infer – it is Plaintiff's burden to allege such a policy, which he does not.

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -14

01  he alleges that he administratively appealed the classification and personally brought his

02  complaint to Defendant Tilton's attention (¶¶ 128, 129, 131).

03        Defendants Tilton, Subia, Bunnell and Campbell are not entitled to dismissal of the

04  "religious freedom" claims against them; this portion of Defendants' motion to dismiss will

05  be DENIED.

06  _8th Amendment: cruel and unusual punishment (Claims VI and VII)_

07        Plaintiff's 8th Amendment claims fall into two categories: medical (confiscation of his

08  medications, denial of the use of an extra mattress/pillow) and "general living conditions" (the

09  denial of the use of his cane in Ad-Seg; the restrictions of the A2B classification, specifically

10  the limited use of showers).  There are separate but related standards for each.

11        **Medical**

12        A violation of the prohibition against cruel and unusual punishment in the context of a

13  prisoner's medical condition occurs when prison officials are deliberately indifferent to an

14  inmate's serious medical needs or to a serious risk of harm.  McGuckin v. Walker, 974 F.2d

15  1050, 1059 (9th Cir. 1992); Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "Deliberate

16  indifference" requires a prison official to know and disregard "an excessive risk to inmate

17  health and safety" (Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir.

18  2002)); it is characterized by denying, delaying or intentionally interfering with medical

19  treatment.  Estelle, 429 U.S. at 104.

20        A "serious medical condition" is defined as one that "significantly affects an

21  individual's daily activities" or is characterized by "the existence of chronic and substantial

22  pain."  McGuckin, 974 F.2d at 1059-60.  By these standards, Plaintiff has alleged a serious

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -15

01  medical condition (¶¶ 98, 103) and has alleged actions which plausibly constitute deliberate

02  indifference to his medical needs.

03          Defendants attack this claim for Plaintiff's lack of specificity: how did each of the

04  named Defendants – Fox, Griffin, Montanez, Rodriguez, and Lewis -- specifically confiscate

05  Plaintiff's medications or deny him the use of an extra mattress and pillow?  The Court

06  agrees: with the exception of the nurse (Defendant Mwangi) it is not plausible that all of these

07  Defendants confiscated his medications and Plaintiff fails to "plead[] factual content that

08  allows the court to draw the reasonable inference that the defendant is liable for the

09  misconduct alleged."  Iqbal, 129 S.Ct. at 1949.  Nor does Plaintiff plead sufficient factual

10  detail to draw a plausible connection between any of the named Defendants and the denial of

11  the extra mattress and pillow.

12          **General living conditions**

13              An 8th Amendment claim that a prison official has deprived inmates of
                humane conditions must meet two requirements, one objective and one
14              subjective.  "Under the objective requirement, the prison official's acts or
                omissions must deprive an inmate of the minimal civilized measure of life's
15              necessities.  The subjective requirement, relating to the defendant's state of
                mind, requires deliberate indifference."
16
17  Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir.  2000)(citation omitted).

18          Plaintiff adequately pleads deprivation of "the minimal civilized measure of life's

19  necessities" in his allegations of the confiscation of his cane and the resultant lack of mobility

20  and access to daily exercise while in Ad-Seg.  (¶¶ 49, 79).  He alleges that the confiscation

21  resulted from a policy instituted by Defendant Subia (¶ 78), who knew that he required the

22  use of his cane for mobility.  ¶ 81.  He alleges that Defendants Montanez, Rodriguez and

01   Griffin specifically denied him the use of his cane when he requested its use for outdoor

02   exercise, and knew that he required it for mobility.   ¶¶ 76, 77, 82, 83.

03           All of Plaintiff's allegations regarding the A2B classification fail as a matter of law as

04   violations of the 8th Amendment.  The only condition of the A2B classification alleged by

05   Plaintiff which even theoretically could rise to the level of deprivation of "the minimal

06   civilized measure of life's necessities" is the shower and outdoor exercise restrictions.  But

07   keeping in mind that Plaintiff only alleges a restriction which applies to weekend, evenings

08   and holidays (¶ 124), the Court finds as a matter of law that a partial restriction of this nature

09   does not qualify as the "unnecessary and wanton infliction of pain" that defines "cruel and

10   unusual punishment."  *See* <u>Rhodes v. Chapman</u>, 425 U.S. 337, 346 (1981).  The Constitution

11   "does not mandate comfortable prisons" (<u>Id.</u> at 349) – a certain amount of hardship and

12   deprivation is to be expected, and Plaintiff's A2B allegations do not rise above the acceptable

13   level of such hardship.[2]

14           Plaintiff has sufficiently alleged 8th Amendment violations only against Defendants

15   Griffin, Montanez, Mwangi, Rodriguez and Subia.  These claims will be DISMISSED against

16   the remainder of the Defendants.

17   <u>*Due process/equal protection violations (Claims VIII and IX)*</u>

18           Plaintiff's "disability – coupled with administrative segregation in an SHU

19   *[Segregated Housing Unit]* that was not designed for disabled persons – gives rise to a

20

---

21   [2] Plaintiff points out that this Court has previously upheld this claim as regards Defs Subia and Tilton against
     earlier motions to dismiss.  Dkt. No. 48, pp. 9-11.  That is true, however (1) an amended complaint supersedes
     the original complaint (<u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1262 (9th Cir. 1992)) and (2) a complaint drafted by

22   legal counsel – as this one presumably was – is subject to a more stringent standard of construction than
     Plaintiff's *pro se* complaints. <u>Hassel v. Sisto</u>, 2011 WL 2946370, *4 fn. 1 (E.D.Cal. 2011).

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -17

01 protected liberty interest." <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078-79 (9th Cir. 2003).  The

02 due process violation which he alleges is the refusal to issue a "CDC Form 128-G

03 classification chrono and/or other necessary paper work that Mr. Hightower required in order

04 to appeal the decision to keep him in Ad-Seg."  ¶ 68.  He alleges "on information and belief"

05 that Defendants Huerta-Garcia, Reyes, Reaves, Grannis, Campbell, Subia and Tilton were

06 responsible. <u>Id.</u>

07      It is plausible that Defendant Grannis, as the Chief of Inmate Appeals at CDCR (¶ 21),

08 has responsibility for the violation alleged in this claim. Plaintiff alleges no facts from which

09 it is plausible or reasonable to infer that any of the other supervisory Defendants were

10 responsible for the failure to provide him with the documents that would have allowed him to

11 appeal his continued placement in Ad-Seg.

12      Plaintiff's due process/equal protection claim against Grannis will not be dismissed;

13 the claim is DISMISSED against Defendants Huerta-Garcia, Reyes, Reaves, Campbell, Subia

14 and Tilton.

15 <u>*CA Gov C §844.6: Public employee negligence (Claim X)*</u>

16      CA Gov C §844.6 states, in relevant part: "Nothing in this section exonerates a public

17 employee from liability for injury proximately caused by his negligent or wrongful act or

18 omission."  §844.6(d).  Defendants argue that the statute creates no civil remedies and

19 establishes no duties owed to Plaintiff by Defendants.  The statute does not, by its own terms,

20 create a civil remedy, but the Court disagrees that it establishes no duty owed to inmates by

21 those charged with caring for them while incarcerated.

22      California has recognized that "there is a special relationship between jailer and

01  prisoner which imposes a duty of care on the jailer to the prisoner." Giraldo v. CDCR, 168

02  Cal.App.4th 231, 252-53 (2008).  Federal courts recognizing this duty have cited to CA Gov

03  C §844.6.  See Kodimer ex rel. Lyn Ramskill v. County of San Diego, 2010 WL 2635548,

04  *10 (S.D.Cal. 2010).

05      The Court also rejects Defendants' argument that Plaintiff has failed to allege any

06  facts that Defendants' acts breached a duty of care that § 844.6 was designed to protect.  The

07  Court reads this complaint to allege (underlying every claim of Plaintiff's which is not subject

08  to dismissal) a duty of care which has been breached.

09      Defendants' motion to dismiss this claim is DENIED.

10  _Bane Act (CA Civ. C. § 52.1): Interference with the exercise of a state/federal right (Claim_

11  _XI)_

12      CA Civil Code § 52.1 states in relevant part:

13          Any individual whose exercise or enjoyment of rights secured by the
            Constitution or laws of the United States, or of rights secured by the

14          Constitution or laws of this states, has been interfered with…. may institute
            and prosecute in his or her own name and on his or her own behalf a civil

15          action for damages… injunctive relief or other appropriate equitable relief…

16  The interference must be by "threats, intimidation, or coercion" (§ 52.1(a)) and speech alone

17  is insufficient, unless the speech threatens violence against person or property (§ 52.1(j)).

18      The Court again rejects the argument that Plaintiff has alleged no facts that support the

19  conclusion that any of the Defendants acted in a manner contrary to this statute – Plaintiff's

20  allegations concerning the destruction of Plaintiff's property while detained in Ad-Seg (with

21  the accompanying threats should he not acquiesce to the destruction) create a plausible

22  inference that this statute has been violated, and identifies very specifically the individual

01 Defendants involved (Montanez, Rodriguez, Griffin, Gutierrez and Fox).  ¶¶ 114-115.

02     Plaintiff includes the supervisory Defendants in the Bane Act violation with

03 allegations that they knew of the destruction (and accompanying threats) and did nothing to

04 prevent them.  ¶ 119.  The Court applies to the statutory violations alleged in Claim XI the

05 legal principle regarding the liability which attaches to constitutional violations if a supervisor

06 is aware of the violations and does not take preventive action (*see*, e.g., <u>Taylor v. List</u>).  The

07 motion to dismiss this claim against Defendants Huerta-Garcia, Reyes, Reaves, Grannis,

08 Campbell, Subia, or Tilton is DENIED.

09 *Qualified immunity*

10     Qualified immunity exists whenever the Court finds that either (1) none of the

11 Defendants' acts amount to a violation of constitutional rights or (2) no reasonable person in

12 Defendants' position could have believed that their conduct was unlawful.  <u>Anderson v.</u>

13 <u>Creighton</u>, 483 U.S. 635 (1987).  Defendants contend that

14     1.  Plaintiff has failed to adequately plead a violation of a state or federal constitutional

15         right; and

16     2.  Plaintiff has alleged nothing demonstrating that a reasonable person could have

17         believed that Defendants' conduct was unlawful.

18     The fact that all but one of Plaintiff's claims is surviving against at least a portion of

19 Defendants establishes that Plaintiff has plead facts from which a plausible inference of

20 constitutional violations can be drawn.  And Plaintiff is not required to plead facts which

21 demonstrate a personal knowledge of unlawfulness – the "reasonable person" standard

22 indicates that this portion of the qualified immunity test is a matter of law left to the Court's

01  discretion.  This Court finds that a reasonable person would have known, given established

02  law at the time of these incidents, that the behavior alleged was not lawful.  Defendants have

03  not established their right to qualified immunity and that request is DENIED.

04  _Leave to amend_

05      Plaintiff's complaint has been amended twice, the second time (presumably) with the

06  assistance of counsel.  The case has been pending for nearly four years.  The Court's ruling on

07  this motion leaves Plaintiff's case as plead almost completely intact.  The Court will not grant

08  further leave to amend.

09      Defendants have 14 days from the filing of this order to file their answer to the

10  amended complaint.  Following the filing of Defendants' answer, the parties should look for a

11  scheduling order and prepare to move this case forward to trial.

12

13      DATED this __9th___ day of __April__, 2012.

14

15

16

17

18                          Marsha J. Pechman
                            United States District Judge

19

20

21

22

ORDER RE: MOTION TO DISMISS
2ND AMENDED COMPLAINT
PAGE -21